UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PATRICK GAFFNEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Case no. 2:11-cv-189 |
| NEAL SHELTON and CATHERINE | : |
| SHELTON, individually and | : |
| d/b/a NEAL'S VINTAGE GUITARS; | : |
| NEAL'S MUSIC; and NICHOLAS | : |
| PANICCI, | : |
| | : |
| Defendants. | : |

**<u>Memorandum Opinion and Order:
Defendants' Motion to Dismiss</u>**

Plaintiff Patrick Gaffney ("Gaffney") has brought this civil action against defendants Neal Shelton and Catherine Shelton, individually and doing business as Neal's Vintage Guitars; Neal's Music; and Nicholas Panicci ("Panicci"), alleging breach of contract, unjust enrichment, consumer fraud, and fraud in the inducement. Compl., ECF No. 1.  The claims stem out of Shelton's 2007 purchase of a 1959 sparkle blue Fender Stratocaster electric guitar ("the Stratocaster") from Panicci.[1] Subject matter jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.

---

[1]   Gaffney also named defendants Dan Duehren ("Duehren") and David Swartz ("Swartz"), the co-founders and operators of California Vintage Guitar and Amp, whom he later dismissed without prejudice on October 20, 2011 after they filed a motion to dismiss.  Notice of Dismissal, ECF No. 15.

Before the Court is the Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, the Defendants' motion to dismiss is **DENIED** as to claims made against Neal Shelton, Neal's Music, Neal's Vintage Guitars and Nicholas Panicci, and **GRANTED** with leave to amend as to claims made against Catherine Shelton.  The Complaint fails to state a claim for which relief can be granted against Catherine, and is therefore dismissed with leave to amend within 30 days.

## Factual Background

The following factual allegations, derived from Gaffney's Complaint, are taken as true for the purposes of evaluating the motion to dismiss.  Gaffney is a resident of Putney, Vermont, and an avid collector, seller and trader of vintage guitars and related memorabilia.  Compl. ¶ 4, ECF No. 1.  Neal and Catherine Shelton are residents of Huntington Beach, California.  According to the Complaint and materials filed in the Opposition to the Motion to Dismiss, the Sheltons are dealers and retailers of vintage guitars, and own and operate Neal's Music and Neal's Vintage Guitars, a subsidiary of Neal's Music, also in

Huntington Beach, California.[2]  Compl. ¶ 6; Mem. in Opp'n to Mot. to Dismiss Ex. 5, ECF No. 14-14.

Panicci is a resident of Los Angeles, California and a dealer and collector of vintage guitars. Compl. ¶ 11.  Panicci was the owner of the Stratocaster at the time it was sold to Gaffney, and had previously placed the guitar with Mr. Shelton to advertise.  Compl. ¶ 17.

Neal Shelton operates a website, "www.nealsmusic.com", and consumers are able to purchase goods directly from that site. He has advertised individual guitars for sale on eBay, gbase.com, and in Vintage Guitar Magazine.  Compl. ¶¶ 6-7; Gaffney Decl. ¶¶ 8, 26, ECF No. 14-1.

Gaffney and Neal Shelton had conducted business prior to the Stratocaster purchase.  In 2001 and 2002, Gaffney purchased two guitars from Mr. Shelton.  At the time, Gaffney resided in Vermont and Shelton shipped the guitars purchased to Vermont. Gaffney Decl. ¶ 6-7.  Gaffney also made an offer on one of Neal's guitars advertised on eBay in February 2007.  Gaffney Decl. ¶ 8.  During the same month Gaffney purchased the Stratocaster, he bought an additional guitar belonging to Panicci through Mr. Shelton, a 1968 purple Fender Telecaster,

---

[2] Defendants dispute that Catherine Shelton is an owner and operator of Neal's Music.

which was paid for, shipped, and received by Gaffney without complaint. Gaffney Decl. ¶ 17.

    I. *The Blue Sparkle Fender Stratocaster*

From June 2007 to September 2007, Neal Shelton advertised a 1959 Fender Stratocaster with blue sparkle finish in Vintage Guitar Magazine, a magazine with national circulation. Compl. ¶ 12. In July 2007, dismissed Defendants Swartz and Duehren, who had previously assisted Gaffney in finding guitars to purchase, emailed Gaffney pitching the Stratocaster. They included photographs and a history of the guitar with their email. Compl. ¶¶ 13, 17. Gaffney was aware that a similar but altered version of the same guitar was being advertised within the vintage guitar community, but was assured by Swartz and Duehren that this guitar was in original condition. Compl. ¶ 14. Gaffney also received a phone call from Mr. Shelton about the Stratocaster as well as additional vintage instruments.[3] Compl. ¶ 15. Panicci called Gaffney a few days later, claiming ownership of the Stratocaster, and assuring Gaffney of the guitar's original condition. Compl. ¶ 16. Neal Shelton, working as Panicci's agent, contacted Gaffney again, this time via email, to reassure Gaffney of the original condition of the guitar as well, and stated the guitar's asking price as

---

[3]    Neal Shelton counters that all contact between himself and Gaffney was initiated by the Plaintiff. Neal Shelton Decl. ¶25, ECF No. 5-2.

4

$225,000.  Compl. ¶ 17.  However, Gaffney asserts that at this time, Panicci had been told by vintage guitar dealers and experts that the Stratocaster was likely not an original, that it had previously been refinished, and that the neck of the guitar was not original. Compl. ¶ 16.

On July 24, 2007, Panicci sent Gaffney a package of photos via Federal Express, showing the Stratocaster in the original dark blue color.  Compl. ¶ 18.  After receiving the photos, Gaffney and Panicci agreed on a purchase price of $150,000 for the guitar, case, and related memorabilia, to be paid as $130,000 in wired cash, and three additional guitars Gaffney was to send to Panicci totaling $25,000 in value.  To make up the $5000 disparity, Panicci was to pay Gaffney the difference. Compl. ¶ 19.  In addition, the parties discussed and agreed upon a 24-hour approval period in which the buyer could keep the items or return them as unsatisfactory.[4]  Compl. ¶ 20.

Gaffney wired Panicci $50,000 on August 8, 2007, and an additional $80,000 on August 9.  On the same day, Neal confirmed with Gaffney that Panicci had received the funds and the Stratocaster had been sent to Vermont.  Compl. ¶ 22.

On August 10, 2007, Gaffney received the guitar, and immediately observed that the finish was not original, as it was

---

[4]     Defendants dispute that the approval period was agreed upon.

closer to aqua in color than dark blue, and the texture of the finish was rougher than that of the original.  Compl. ¶ 23. Later that day, Gaffney called Neal Shelton to inform him that he was returning the Stratocaster pursuant to their agreed upon 24-hour waiting period.  Mr. Shelton confirmed that Panicci would refund Gaffney, and all parties agreed the guitar would be shipped on August 14, 2007 for arrival to Neal's place of business on August 15.  Compl. ¶ 24.

On August 12, Panicci sent Gaffney an email advising him not to ship the guitar to Neal Shelton.  Gaffney replied asking where to ship the guitar, but Panicci never responded.  Compl. ¶ 25.  On August 13, Gaffney received an email from Panicci's attorney instructing him not to return the guitar to Mr. Shelton or Panicci.  Compl. ¶ 26.  After Panicci refused to accept the Stratocaster's return, Panicci's attorney also sent to Gaffney two written letters asserting that the guitar was in its original condition.  Compl. ¶ 27.

In 2010, Gaffney had the guitar sent for a consignment sale to a vintage guitar expert, who immediately informed him that the guitar was not the original color, that the neck and frets of the guitar had been refinished, replaced, or altered, and that the guitar's value did not exceed $10,000.  Compl. ¶ 16.

Gaffney filed his complaint against Defendants on July 25, 2011.

6

**Discussion**

The Court will take up Defendants' 12(b)(2), 12(b)(3), and 12(b)(6) challenges in that order. It analyzes the claims against Catherine Shelton separately.

Because the parties consider Neal Shelton and his businesses as one, this Court will address the issues in regards to Mr. Shelton, Neal's Music, and Neal's Vintage Guitars collectively. Compl. ¶ 6.

I. *Personal Jurisdiction*

Defendants argue that Gaffney has not shown that Mr. Shelton, Shelton's businesses, and Panicci are subject to personal jurisdiction in Vermont.

    A. *Legal Standard*

It is a plaintiff's burden to show personal jurisdiction over a defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). When little discovery has been conducted and no evidentiary hearing has been held, the plaintiff need only make a *prima facie* showing that includes "an averment of facts that, if credited by the ultimate trier of fact, would establish jurisdiction over the defendant." Id. at 567. This showing may rest solely on a plaintiff's own pleadings, affidavits, and supporting materials. Tom and Sally's Homemade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp. 297, 300 (D. Vt. 1997). In a diversity action, personal

7

jurisdiction "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."  Metro. Life, 84 F.3d at 567.

A federal court may exercise personal jurisdiction over a foreign defendant if the plaintiff makes a two-part showing: (1) "that the defendant is amenable to service of process under the forum state's laws;" and (2) that "the court's assertion of jurisdiction under these laws comports with the requirements of due process."  Id.  Since the Vermont long-arm statute, Vt. Stat. Ann. tit. 12 § 913(b), permits jurisdiction over foreigners to the full extent of the due process clause, the Court turns to the second prong of the relevant inquiry, due process.  Ben and Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F. Supp. 1206, 1209 (D. Vt. 1996).

The due process test involves two inquiries relating to "minimum contacts" and "reasonableness."  Metro. Life, 84 F.3d at 567.  In analyzing a defendant's contacts with the forum state, a court looks to "some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  The defendant must have certain

8

minimum contacts with the forum state so as to "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).

The minimum contacts analysis differs for the two types of personal jurisdiction, general and specific.  A court may assert general jurisdiction over a foreign defendant when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).  Specific jurisdiction relies upon an "activity or occurrence that takes place in the forum state and is therefore subject to the State's regulation." Goodyear Dunlop, 131 S. Ct. at 2846.  While general jurisdiction addresses all affiliations a party may have with the forum state, "specific jurisdiction is confined to the adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  Id. (quoting Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)).

Once the requisite minimum contacts have been established, the court must then turn to the reasonableness inquiry. The plaintiff must show that asserting jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice."  Metro. Life, 84 F.3d at 568 (quoting

9

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The five factors looked to when analyzing reasonableness are: (1) the burden to the defendant; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving the cases; and (5) the interest of all states in advancing their shared social policies.  Burger King, 471 U.S. at 476-77 (citing World-Wide Volkswagen, 444 U.S. at 292).

    *B. Minimum Contacts Analysis*

    Gaffney asserts that the Court has both general and specific jurisdiction over defendants.  Because the Court concludes it has specific jurisdiction over Neal Shelton, his companies, and Panicci, it is unnecessary to decide whether the Defendants' forum connections are continuous and systematic. Int'l Shoe Co., 326 U.S. at 317.

    To establish minimum contacts necessary for specific jurisdiction, Gaffney must show that his claims arise out of Defendants' contacts with Vermont.  *See* Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 166 (2d Cir. 2010); Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1028 (2d Cir. 1997).  Gaffney states that both Neal Shelton and Panicci reached out to him in Vermont when offering the Stratocaster for sale.  Compl. ¶¶ 15-17.

Neal Shelton called Gaffney, a Vermont resident, pitching the Stratocaster. Compl. ¶ 15. A series of emails occurred between Mr. Shelton and Gaffney regarding the Stratocaster sale, and once the sale was finalized, Neal confirmed the shipment of the guitar to Gaffney's address in Vermont. Compl. ¶¶ 22-23. He was aware that Gaffney was a resident of Vermont, as the two had conducted business previously and Neal Shelton had mailed purchases to Gaffney in Vermont. Gaffney Decl. ¶¶ 6-8; Mem. in Opp'n to Mot. to Dismiss Ex. B., ECF No. 14-3.

Panicci also contacted Gaffney directly regarding the Stratocaster. Compl. ¶ 16. In an effort to complete the sale, Panicci mailed a package of photographs of the Stratocaster to Gaffney to his address in Vermont. Compl. ¶ 18. Once the sale was confirmed, Gaffney wired money to Panicci in California via his Vermont bank account, a River Valley Credit Union account based in Putney, Vermont. Compl. ¶¶ 21-22; Mem. in Opp'n to Mot. to Dismiss Ex. F, ECF No. 14-7. According to the shipping receipt, Panicci mailed the Stratocaster to Gaffney in Vermont. Mem. in Opp'n to Mot. to Dismiss Ex. G, ECF No. 14-9. After Gaffney requested to return the Stratocaster, he received a written letter from Panicci's attorney at his home in Vermont asserting that the guitar was original. Compl. ¶ 27.

Neal Shelton and Panicci were aware they were negotiating with a Vermont resident, and they sent correspondence and

11

merchandise to Vermont, as well as received funds from Vermont. The Court finds that the correspondence and negotiations were directed at the forum state, and Defendants were availing themselves of the privileges of conducting business in Vermont. Burger King Corp., 471 U.S. at 475.  The correspondence was directly related to Gaffney's claims, and constituted minimum contacts sufficient for a finding of specific jurisdiction.

    *C. Reasonableness Analysis*

In analyzing the second part of the due process analysis for personal jurisdiction, the Court finds that exercising jurisdiction in Vermont will not violate notions of fair play and substantial justice.  In Tom and Sally's Homemade Chocolates, the Court found that fair play and substantial justice were not offended when "the burden of litigating in an out of state forum would be no more for the Defendant than it would be for Tom and Sally's [a Vermont Corporation] if the litigation were in [Defendant's home state]."  977 F. Supp. at 301.  The same facts are found here, and litigation in California would be an equal burden on Gaffney as litigating in Vermont would be on Defendants.  Additionally, modern technology allows for court communications to be carried out electronically.  As a result, any jurisdictional change would result in an equal burden on Gaffney, and as such, in finding

Vermont has personal jurisdiction over Defendants, the concepts of reasonableness are not violated.

*II. Venue*

Defendants have requested their case be dismissed due to improper venue.  "[F]or venue to be proper, significant events or omissions material to the plaintiff's claims must have occurred in the district in question, even if other material events occurred elsewhere." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).  In venue disputes, the plaintiff bears the burden of proving that venue is proper. Country Home Products, Inc. v. Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 568 (D. Vt. 2004).  A contract may be negotiated in more than one state. Kirkpatrick v. Rays Group, 71 F. Supp. 2d 204, 213 (W.D.N.Y. 1999).  Venue may be proper in more than one district, and a plaintiff need only establish that a substantial part of the event occurred here even if a great part of the event occurred elsewhere. Country Home Products, 350 F. Supp. 2d at 568 (citing Kirkpatrick, 71 F. Supp. 2d at 212.)  "[T]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  5B Wright & Miller, Federal Practice & Procedure Civ. 1352 (3d ed. 2011).

In arguing that venue is improper, Defendants assert that Gaffney is in the business of buying and selling guitars, and that he regularly conducts this type of business with residents

13

of many states.  Defendants argue that "Plaintiff was actually doing business in California and therefore subject to jurisdiction and venue in California rather than the opposite, as he suggests."  Def.'s Mot. to Dismiss 11.  However, Gaffney asserts in the complaint that multiple communications were sent to him in Vermont, and his portion of the negotiations occurred in Vermont.  Viewing the facts in the light most favorable to Gaffney at this stage, negotiations for and performance of the contract took place in both California and Vermont.  As such, venue is proper in Vermont as well as in California, and the motion to dismiss is therefore denied.

*III. Failure to State a Claim Upon Which Relief Can be Granted*

Finally, Defendants assert that even if jurisdiction and venue are proper, the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Gaffney has failed to state a claim upon which relief can be granted.

On a (12)(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Bolt Elect. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a

claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Here, Gaffney asserts four claims: (1) breach of contract; (2) unjust enrichment; (3) consumer fraud; (4) fraud in the inducement. Gaffney has provided sufficient facts within his complaint to state claims upon which relief can be granted.

Gaffney has asserted that negotiations for the purchase of the Stratocaster took place between Gaffney and both Neal Shelton and Panicci, and that a purchase was eventually made. Compl. ¶¶4-23. Gaffney claims that a 24-hour approval period was agreed upon in which he could return the guitar, and that this period was not honored. Compl. ¶¶ 20, 24. Gaffney has also asserted that the Defendants misrepresented the condition of the Stratocaster. Compl. ¶¶ 18-23. Based upon the details of the facts provided and apart from the exception detailed below, Gaffney has met the burden under Fed. R. Civ. P. 12(b)(6) that each of his claims are plausible on their face.

However as to Catherine Shelton, Gaffney fails to state a justiciable claim. The only mention of Catherine Shelton in the complaint is a statement that she resides in Huntington Beach, California and she and Neal Shelton "are dealers and retailers of vintage guitars, and operate a business . . . known as Neal's Vintage Guitars." Compl. ¶ 5. The only evidence of Catherine's involvement in the Stratocaster dispute is that she is listed as

a Business Owner of Neal's Music by a filing from the Orange County Clerk's office database provided by Gaffney.  Mem. in Opp'n to Mot. to Dismiss Ex. 5, ECF No. 14-14.  There is no mention of Catherine Shelton having any role in the Stratocaster negotiations or sale.  The Complaint does not mention any contact between Gaffney and Catherine.  Thus, the Court finds the complaint and supporting documents are insufficient to state a claim upon which relief can be granted against her.  The Court therefore grants the moving Defendants' 12(b)(6) motion to dismiss with respect to Catherine Shelton with leave for Gaffney to amend his complaint.

For the reasons stated above, Defendants' motion to dismiss is **DENIED in part, and GRANTED in part** with leave to amend within 30 days, as to Catherine Shelton.

Dated at Burlington, in the District of Vermont, this 3rd day of February, 2012.

/s/William K. Sessions III_____
William K. Sessions III
U.S. District Court Judge